FREDERICKA HOMBERG WICKER, Judge.
 

 12Pefendant/appeIIant Michael Harrell appeals his felony guilty plea convictions, sentences, and enhanced sentence on one of the convictions. The defendant assigns the following counseled errors: (1) the trial court erred by failing to properly advise him of the potential penalties for his crimes, (2) on a felon in possession of a firearm charge, the trial court imposed the promised term of imprisonment but also imposed statutory restrictions despite the fact that the restrictions were not the sentence promised in the plea agreement, (3) the guilty pleas were not knowingly, voluntarily, or intelligently entered, (4) the guilty pleas are null, (5) trial counsel was ineffective for failing to object to the fact that the sentences imposed were not those promised as part of the plea bargain, (6) trial counsel was ineffective for failing to object or to otherwise seek to correct the erroneous advice given to the defendant concerning the sentencing provisions. The defendant also filed a pro se brief contend
 
 *314
 
 ing that the trial court subjected him to |s“double enhancement” under the multiple offender bill of information. For the following reasons, we affirm the defendant’s convictions and sentences.
 

 PROCEDURAL HISTORY
 

 The defendant was charged by bill of information with offenses allegedly occurring on July 26, 2005. He was charged with the following enumerated counts: (1) felon in possession of a firearm, a violation of La. R.S. 14:95.1, (2) possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A), (3) possession vrith intent to distribute 3,4-methylenedioxy-methamphetamine (MDMA), a violation of La. R.S. 40:966(A), (4) possession of cocaine in excess of 28 grams, a violation of La. R.S. 40:967(F), (5) possession of dia-zepam, a violation of La. R.S. 40:969(C), and (6) possession of clonazepam, a violation of La. R.S. 40:969(C). The defendant ultimately entered unconditional guilty pleas to these charges.
 

 On May 16, 2007, the trial court sentenced the defendant on Count 1 to 10 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On the remaining counts the trial court imposed no statutory restrictions. On Counts 2 and 3, the trial court sentenced the defendant to 10 years at hard labor. On Count 4, the trial court sentenced the defendant to 20 years at hard labor. On Counts 5 and 6, the trial court sentenced the defendant to five years at hard labor. The trial court additionally ordered that the sentences be served concurrently.
 

 That same day, the state filed a habitual offender bill of information alleging that the defendant was a second felony offender. The state sought to enhance the defendant’s sentence on Count 2 based on a predicate possession of cocaine conviction. After the trial judge advised the defendant of his habitual offender rights, the defendant admitted to the allegations in the habitual offender bill of | information. The court accepted the stipulation, found that the defendant was a second felony offender, and vacated the 10-year sentence on Count 2. The trial court imposed an enhanced 22V¿ year sentence at hard labor without benefit of probation and suspension of sentence. She imposed the enhanced sentence to run concurrently with the other sentences on the remaining charges. The defendant was subsequently granted an out of-of-time appeal.
 

 FACTS
 

 Since the defendant pleaded guilty there was no trial in this matter. The following facts are discerned from the motion to suppress hearing and the police report.
 

 The defendant filed a motion to suppress evidence and statements, which the trial court denied. Since the defendant entered unconditional guilty pleas, the motion to suppress is not at issue herein.
 

 At the pretrial suppression hearing, Chad Peterson, a narcotics detective with the Kenner Police Department, testified that he investigated a case involving the defendant. After receiving information from a confidential informant, Detective Peterson conducted a surveillance of the defendant’s house throughout the month of July 2005. The defendant’s home is located in a high-crime, high-narcotics area. On several occasions, the officer observed subjects arrive at the residence and walk to the door. On July 26, 2005, Detective Peterson stopped and arrested an individual who had left the residence. That person was in possession of crack cocaine. The individual stated that he had just purchased crack cocaine from a black male known to him as “Country” or “Mike” from that residence. Detective Peterson applied for and received a search warrant
 
 *315
 
 to search the defendant’s residence. When he arrived at the residence, Detective Peterson announced the officers’ presence but no one came to the front door. Detective Peterson testified | ¡¡that the front door was unlocked. Upon entering the defendant’s residence, Detective Peterson observed the defendant standing in the kitchen. Detective Peterson detained the defendant immediately.
 

 The officers seized evidence as a result of the search warrant. Before speaking to the defendant Detective Peterson advised him of his Miranda
 
 [1]
 
 rights. Detective Peterson read the
 
 Miranda
 
 rights from a card. The defendant stated that he understood his rights and wished to make a statement. The officer asked the defendant if the defendant had any illegal narcotics or contraband inside his residence. The defendant told the officer that he had a bag of marijuana in the freezer and something in a black bag in the living room.
 

 According to the police report, the officers seized the following items from the defendant’s residence: (1) 15 plastic bags containing green vegetable matter that tested positive for marijuana with a weight of 970 grams, (2) 31 individually wrapped plastic bags of an off-white-roek-like substance which tested positive for cocaine with a weight of 158 grams, (3) 15 blue and red tablets in a plastic bag which tested positive for MDMA, (4) six tablets identified as diazepam, (5) four tablets identified as clonazepam, (6) a loaded automatic 9 mm firearm with 30 live rounds loaded in the magazine, (7) two digital scales, (8) four glass beakers and two wire stirrers which contained a white powder residue testing positive for cocaine. The police report states that the defendant did not provide the officers with a prescription for diazepam or clonazepam. In addition, officers seized money that was in the defendant’s possession and the defendant’s vehicle.
 

 On May 16, 2007, the trial judge conducted the guilty plea and sentencing hearing. At the outset, defense counsel informed the court that the defendant would withdraw his not guilty pleas to the six-count bill of information and enter | (¡guilty pleas as charged. The trial judge entered into a colloquy with the defendant as follows:
 

 The trial judge informed the defendant that his attorney had indicated to her that she advised him of his Boykin
 
 [2]
 
 constitutional rights; namely, the right to trial by a jury or by the court alone, the right to confront the defendant’s accusers, and, the defendant’s right against self-incrimination. The trial judge stated that defense counsel had advised the court that the defendant was waiving those rights and that the defendant understood the rights. The defendant agreed that he had been so informed by counsel.
 

 The trial judge then informed the defendant that she needed the defendant to convince the court that he understood the consequences of entering the pleas of guilty. The trial judge stated that in order to evidence the defendant’s understanding, she would explain the nature of the crimes and the consequences of a guilty plea. She subsequently stated that if the defendant had any questions or if the defendant did not understand anything, the defendant could stop the trial judge and the trial judge would answer his questions and give any additional instructions that he might desire.
 

 
 *316
 
 When questioned by the trial judge, he answered affirmatively when asked whether he understood the following: (1) these offenses occurred on July 26, 2005, (2) he was pleading guilty to felon in possession of a weapon where the maximum sentence is 15 years, (3) he was pleading guilty to possession with intent to distribute marijuana for which the maximum sentence is 30 years, (4) he was pleading guilty to possession with intent to distribute MDMA for which the maximum sentence is 30 years, (4) he was pleading guilty to possession of over 28 grams of cocaine for which the maximum sentence is 30 years, (5) he was pleading [ 7guilty to possession of dia-zepam for which the maximum sentence is five years, (6) he was pleading guilty of possession of clonazepam for which the maximum sentence is five years, (7) in the aggregate, the sentences exceed 100 years. The trial judge properly informed the defendant of the maximum terms of imprisonment for each of the charged offenses.
 

 The defendant stated that he understood that pleading guilty was his decision and that no one could force him to plead. The defendant also stated that no one used any force, intimidation, coercion, or promise or reward to either him or any member of his family for the purpose of making or forcing him to plead guilty.
 

 The trial judge asked the defendant if he had been advised by his counsel that in the event the court accepted the guilty pleas, he would be sentenced as follows: (1) for felon in possession of a firearm, the court would sentence the defendant to 10 years, (2) for possession with intent to distribute marijuana, the court would sentence the defendant to 10 years, (3) for possession of over 28 grams of cocaine, the court would sentence the defendant to 20 years, (4) for possession of diazepam, the court would sentence the defendant to five years, (5) for possession of clonazepam, the court would sentence the defendant to five years, (6) the sentences would all run concurrently with each other, (7) the state would file a multiple bill to enhance the distribution of marijuana conviction, (8) as a result of the multiple bill, the court would sentence the defendant to 22 1/2 years to run concurrently with the other sentences. The trial judge did not inform the defendant of the sentence on the possession with intent to distribute MDMA. The waiver form indicates that for the MDMA offense, the sentence would be 10 years.
 

 The defendant stated that he understood and agreed to all of the sentences described by the trial court in its colloquy in the event the court accepted the guilty pleas.
 

 |sThe trial judge thereafter informed the defendant of two
 
 Boykin
 
 constitutional rights; the right to trial by judge or jury and the Sixth Amendment right to confront his accusers. The defendant informed the trial court that he understood that he was waiving those rights by pleading guilty. In addition, the defendant acknowledged that he understood that he was waiving his right to hire an attorney to defend him at trial and that if he could not afford an attorney that one would be appointed for him at no cost. The defendant acknowledged that he understood he was waiving his right to an appeal and that he was also waiving his right to have an attorney on appeal appointed for him at no cost. The defendant additionally indicated that he understood that by pleading guilty, he was admitting to the court that he in fact committed each of those crimes to which he was pleading guilty.
 

 The trial judge then entered into a colloquy with the defendant regarding the contemporaneously executed waiver form. The waiver form signed by defense counsel, the trial judge, and the defendant
 
 *317
 
 states that the defendant was advised by his counsel that in the event the trial court accepted the pleas, he would be sentenced in the manner described in the plea colloquy.
 

 Defense counsel informed the trial judge that counsel’s signature was on the waiver form. Counsel’s signature followed the following statements:
 

 I, as attorney for the defendant, was present during the recitation of the foregoing colloquy between the defendant and the trial judge at the time of the defendant’s plea of guilty.
 

 I, also, have informed the defendant of his or her rights, particularly the nature of the crimes to which he or she is pleading guilty, the maximum sentence the court could imposed [sic] under the law, and the fact that the defendant, by entering his plea of guilty, is waiving his or her right to trial by jury, or by the court alone, his or her right to confront his/her accusers, his or her right against self-incrimination, and lastly, that his or her only appeal is for review of jurisdictional defects; and I am entirely satisfied that the defendant knowingly, | ¡¡willingly, and intelligently and voluntarily has entered his plea of guilty, knowing the consequences.
 

 The trial judge asked the defendant if he acknowledged that the waiver form had been read to him, that his attorney and the trial judge had explained the nature of the crimes to which he was pleading guilty, all of his rights, and what rights he was waiving. The defendant replied affirmatively. The trial judge asked the defendant if he was completely satisfied with the explanations of his attorney and the judge. The defendant again replied affirmatively.
 

 The trial judge also asked the defendant if he acknowledged that the act of pleading guilty is a knowing, intelligent, free and voluntary act on his part and whether the defendant knew that no one could force him to plead guilty. In addition, the trial court asked if the defendant knew that by pleading guilty the pleas was more than a confession; it was also convictions. The defendant acknowledged that he signed the waiver form indicating his understanding of the above statements.
 

 The trial, judge subsequently stated that she was satisfied that the defendant was aware of the nature of the crimes to which he was pleading guilty and that he committed each of those crimes. She stated that she was satisfied that the defendant understood the consequences of the pleas and that he made a knowing, intelligent, free, and voluntary act of pleading guilty to the crimes. She found there was a factual basis for the acceptance of the pleas and accepted the defendant’s guilty pleas.
 

 The trial court thereafter imposed the years of imprisonment in conformity with the plea agreement as either stated in the colloquy or written on the waiver form. The trial court stated that the sentence for Count 1 was “without benefit of parole, probation, or suspension of sentence.”
 

 11ftAfter the state indicated that it was filing a second felony offender bill of information on Count 2, the trial court found that the defendant was a second felony offender. The trial court then vacated the previous 10-year sentence on Count 2 and imposed a sentence of 22 1/2 years at hard labor. She stated “[the sentence] will be without benefit of probation and suspension of sentence.” The trial court also stated that she was imposing the habitual offender sentence to run concurrently with Counts 1, 3, 4, 5, and 6.
 

 FIRST, SECOND, THIRD, AND FOURTH ASSIGNMENTS OF ERROR
 

 Although assigned as separate assignments of error, the defendant addresses these four assignments of error together in
 
 *318
 
 one argument. Accordingly, we will consider the assignments of error together.
 

 By these assignments of error, the defendant contends that his guilty pleas to Counts 1, 2, 3, and 4 were not knowing and voluntary for various reasons.
 
 [3]
 
 More specifically, the defendant contends that the trial court erred by failing to advise him of the mandatory fine for Count 1 and Count 4. The defendant also contends that the trial court erred by failing to advise him of the restriction of benefits for Counts 1, 2, 3, and 4 and the enhanced sentence on Count 2. The defendant further contends that he bargained for and received illegally lenient sentences, which render his pleas absolute nullities. He seeks to withdraw his guilty pleas on those counts.
 

 La. C. Cr. P. art. 556.1 outlines the duty of the court when accepting a plea of guilty or nolo contendere:
 

 A.In a felony case, the court shall not accept a plea of guilty or nolo contende-re without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the | nfollowing:
 

 (1) The nature of the chai’ge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
 

 (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
 

 (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
 

 (4)That if he pleads guilty or nolo con-tendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
 

 B. In a felony case, the court shall not accept a plea of guilty or nolo contende-re without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.
 

 C. The court shall also inquire as to whether the defendant’s willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.
 

 D. In a felony case a verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo contendere.
 

 E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.
 

 Violations of La. C. Cr. P. art. 556.1 that do not rise to the level of
 
 Boy-kin
 
 violations are subject to harmless error analysis.
 
 State v. Guzman,
 
 99-1528, 99-1753, pp. 10-13 (La.5/16/00), 769 So.2d 1158, 1164-66;
 
 State v. Gilliam,
 
 01-748, 01-749, 01-750 pp. 5-6 (La.App. 5 Cir. 1/15/02), 807 So.2d 1024, 1027,
 
 writ denied,
 
 02-0512 (La.11/1/02), 828 So.2d 562. In determining whether a violation of Article
 
 *319
 
 556.1 is harmless, the inquiry is whether the defendant’s knowledge and | ^comprehension of the full and correct information would have likely affected his or her willingness to plead guilty.
 
 Gilliam,
 
 807 So.2d at 1027.
 

 Count 1
 

 The defendant pleaded guilty to Count 1, felon in possession of a firearm, a violation of La. R.S. 14:95.1. The sentencing provision, La. R.S. 14:95.1(33), states:
 

 Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
 

 (emphasis added)
 

 On appeal, the defendant contends that the trial court erred by failing to advise him of the mandatory fine pursuant to La. R.S. 14:95.1 (B). The defendant also contends that the trial court erred by failing to inform him that the sentence must be served without benefit of parole, probation, or suspension of sentence.
 

 Mandatory Fine
 

 The waiver of rights form and the sentencing colloquy both indicate that the defendant was accurately informed that he faced a maximum term of fifteen years imprisonment at hard labor for and a minimum term of imprisonment of ten years at hard labor on Count 1. However, the trial court failed to inform the defendant of the mandatory fine under La. R.S. 14:95.1(B).
 

 This Court has previously considered a similar argument and concluded that the fact that the trial court failed to inform a defendant of the possibility of the imposition of a fine under the statute charged does not render the plea involuntary.
 
 See, e.g., State v. Gilliam, supra.
 

 | iaIn
 
 Gilliam,
 
 we noted that although the trial court did not advise the defendant of the fine provisions for one of the charged offenses, the defendant conferred with her attorney before entering her guilty pleas.
 
 Id.
 
 at 1027-28. We additionally noted that the defendant’s sentence was arrived at as part of a plea bargain, that the defendant was advised of the sentence which she would receive by pleading guilty, and that the defendant’s plea bargain was “highly successful” in the sense that she received a sentence considerably below the statutory maximum.
 
 Id.
 
 at 1028. We also noted that the trial court’s failure to advise the defendant of the applicable fines was of “no moment, as no fines were actually imposed.”
 
 Id.
 
 at 1027 (citing
 
 State v. Snavely,
 
 99-1228, p. 17 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 961,
 
 writ denied,
 
 00-1439 (La.2/16/01), 785 So.2d 840).
 

 The defendant cites
 
 State v. Guilbeaux,
 
 99-591 (La.App. 5 Cir. 11/10/99), 749 So.2d 16 in support of his argument. In
 
 Guilbeaux,
 
 this Court determined that the defendant received an illegally lenient sentence under a plea bargain. The defendant in
 
 Guilbeaux
 
 was statutorily ineligible for a suspended sentence because he had two prior felony convictions, however, he nonetheless received a suspended sentence. We held that the plea bargain was “an agreement is an absolute nullity which may not be confirmed” because the negotiated plea agreement was based on an unlawful cause.
 
 Id.
 
 at 19. We vacated the defendant’s sentence and remanded the matter for further proceedings, reserving the defendant his right to withdraw his guilty plea.
 

 This Court has relied on
 
 Guilbeaux
 
 in several subsequent cases to vacate an illegally lenient sentence based on the rationale that a plea bargain that affords a
 
 *320
 
 defendant an illegally lenient sentence is an absolute nullity.
 
 See, e.g., State v. Chisley,
 
 pp. 8-10, 03-426 (La.App. 5 Cir. 10/15/03), 860 So.2d 45, 50-51,
 
 writ denied,
 
 03-3358 (La.4/2/04), 869 So.2d 874 (vacating the defendant’s sentence on jMthe premise that the defendant’s sentence was lenient because he did not receive a minimum 30-year sentence without the benefit of probation or suspension of sentence and without the benefit of parole for at least the first ten years).
 

 In
 
 State v. Campbell,
 
 08-1226 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, the defendant pleaded guilty to one count possession of a firearm by a convicted felon, one count of possession of cocaine between 28 and 199 grams, and one count creating and operating a clandestine laboratory for the manufacturing of cocaine and crack cocaine, violations of La. R.S. 14:95.1, La. R.S. 40:967(F), and La. R.S. 40:983. The state filed a multiple bill of information alleging the defendant to be a second felony offender.
 
 Id.
 
 at 1078. The defendant thereafter stipulated to the allegation in the multiple bill of information. Accordingly, the trial court vacated the original sentence on the possession of cocaine charge and imposed an enhanced sentence of fifteen years at hard labor, without benefit of probation or suspension of sentence for the first five years.
 
 Id.
 

 On appeal, the defendant contended that his guilty pleas to the possession of a firearm by a convicted felon charge and the possession of cocaine charge were not voluntary and knowing because the trial court failed to properly inform him of the mandatory fine and minimum sentence for each offense. He cited
 
 Guilbeaux
 
 in support of his assignment of error.
 

 This Court recognized that we have extended the
 
 Guilbeaux
 
 holding to include any plea agreement that allowed an illegally lenient sentence, without making a distinction between a sentence that was prohibited by law and one that is simply “impermissible under the circumstances presented.”
 
 Id.
 
 at 1080. We noted that, in some cases, such as
 
 State v. Chisley, supra,
 
 the defendant received a sentence that could be permissible under certain circumstances rather than a sentence prohibited by law.
 
 Id.
 
 at 1081. In
 
 Chisley,
 
 the defendant may have been | i5entitled to an otherwise illegally lenient sentence because he was sentenced under the Habitual Offender Law.
 
 See State v. Dorthey,
 
 623 So.2d 1276, 1280-81 (La.1993) (holding that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive);
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672, 676 (holding that to rebut the presumption that an habitual offender sentence was constitutional, the defendant had to “clearly and convincingly” show that he is exceptional).
 

 We held that the extension of the
 
 Guil-beaux
 
 rationale to cases such as
 
 Chisley
 
 was incorrect and found that “an illegally lenient sentence imposed pursuant to a plea bargain is only an absolute nullity if the plea bargain has an unlawful cause or a negotiated sentence prohibited by law.”
 
 Id.
 
 at 1081. We noted that “[i]n the matter before us, where the sentence is illegally lenient due to the failure to impose a mandatory fine, we do not find the plea bai'gain to be an absolute nullity.”
 
 Id.
 

 This Court’s application and use of the
 
 Guilbeaux
 
 holding has been inconsistent. For example, in
 
 State v. Magana,
 
 09-195, *11 (La.App. 5 Cir. 10/13/09), 27 So.3d 893,
 
 *321
 
 we held that “the defendant’s sentence is prohibited by law ... and, therefore, is an absolute nullity that cannot be confirmed on appeal.” We have held similarly in other cases.
 
 See State v. Fairman,
 
 06-366 (La.App. 5 Cir. 10/31/06), 945 So.2d 783;
 
 State v. Flagg,
 
 01-965 (La.App. 5 Cir. 3/26/02), 815 So.2d 208, 211. In some cases, we have explicitly refrained from exercising our authority under La. C. Cr. P. art. 882 to correct an illegally lenient sentence.
 
 See, e.g., State v. Grant,
 
 04-341, pp. 4-5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598;
 
 State v. Thomas,
 
 07-940, p. 6 (La.App. 5 Cir. 3/25/08), 983 So.2d 943, 946. However, in other cases, we have exercised our authority to correct an illegally lenient | ^sentence.
 
 See, e.g., State v. Sampognaro,
 
 08-371 (La.App. 5 Cir. 1/27/09), 9 So.3d 878, 880.
 

 In this case, we find the reasoning in
 
 Campbell
 
 to be sound, and we adopt it here. We agree that when a sentence is illegally lenient due to the failure of the trial court to impose a mandatory fine, the plea bargain is not an absolute nullity. We also note that the defendant consulted with his attorney prior to entering his guilty pleas, was advised of the sentence he would receive by pleading guilty, and received a favorable plea bargain. Moreover, the trial court did not impose a fine in this case. Under the circumstances, we find that the trial court’s failure to impose the mandatory fine on Count 1 was harmless. We will not exercise our authority to correct the defendant’s illegally lenient sentence.
 

 Restriction of Benefits
 

 The defendant also contends that his guilty plea on Count 1 was involuntary because the trial judge breached the plea bargain he agreed to with the state by imposing the statutory restriction that his sentence be served without the benefit of parole, probation or suspension of sentence as required by statute. Put differently, the defendant contends that his plea was not freely and voluntarily given because he was induced to plead guilty by a promise for an illegally lenient sentence. He further contends that he should be able to withdraw his guilty plea because the state agreed to an illegally lenient plea bargain.
 

 In this case, the trial court sentenced the defendant to a term of imprisonment without benefit of parole, probation, or suspension of sentence, as required by La. R.S. 14:95.1(B). However, neither the waiver of rights form nor 117the plea colloquy expressly indicates defendant was advised of the mandatory statutory restrictions. The waiver of rights form indicates defense counsel advised defendant of the maximum sentence the court could impose under the law, although there is no specific reference to any advice as to the restriction of benefits.
 

 We have been unable to find a reported Louisiana case where the trial court sentenced the defendant to a term of imprisonment subject to statutory benefit restrictions and neither the plea colloquy nor a waiver of rights form indicated that the defendant would not be subject to restrictions. We note, however, that the appellate courts have held when the record establishes that an accused was informed of and waived his right to trial by jury, to confront his accusers and against self-incrimination, the burden shifts to the accused to prove that despite this record his guilty plea was involuntary.
 
 See, e.g., State v. Bradford,
 
 627 So.2d 781, 783 (La.App. 2 Cir.1993) (citing
 
 State ex. rel. La-Fleur v. Donnelly,
 
 416 So.2d 82 (La.1982)). Here, the defendant has not met his burden. There is no evidence in the record before us that the defendant’s guilty plea was involuntary. In fact, the evidence in the record leads us to the opposite eonclu
 
 *322
 
 sion. The defendant’s attorney signed the waiver of rights form indicating that she informed the defendant of the “maximum sentence the court could imposed [sic] under the law.”
 
 See also Henderson v. Morgan,
 
 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976) (“[I]t may be appropriate to presume that in most eases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.”). The defendant did not object when the trial court imposed the sentence on Count 1 without benefits. There is no indication in the record before us that the defendant mistakenly believed he would receive a sentence unrestricted by statutory benefits.
 

 |iSIn addition, we note that the defendant was sentenced to an enhanced sentence of 22½ years imprisonment at hard labor without benefit of probation or suspension of sentence on Count 2. The defendant was sentenced as a second felony offender, thus, he “shall be eligible for parole consideration upon serving one-half of the sentence imposed.” La. R.S. 15:574.4.
 
 [4]
 
 Therefore, the defendant’s ten-year sentence on Count 1 will in effect be served without statutory benefits even though the trial court did not explicitly restrict statutory benefits on Count 1.
 
 See also State v. Grant,
 
 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (“Moreover, in the present case, we find that the failure of the trial court to restrict [the defendant’s 11 year] sentence on count one is inconsequential because the entirety of his [11 year] sentence on count two was imposed without the benefit of parole, probation or suspension of sentence and the two sentences were ordered to run concurrently.”).
 

 Under the circumstances presented, we cannot find that the defendant’s guilty plea on Count 1 was unknowing or involuntary because the trial court failed to impose a sentence without the benefit of parole, probation or suspension of sentence.
 

 Count 2
 

 The defendant pleaded guilty to Count 2, possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A). The sentencing provision, La. R.S. 40:966(B)(3) states:
 

 [U]pon conviction [the defendant shall be] sentenced to a term of imprisonment at hard labor for not less than five nor more than thirty years, and pay a fine of not more than fifty thousand dollars.
 

 |13In his brief to this Court, counsel for the defendant notes “[w]hile the court did inform Mr. Harrell that the maximum sentence for the crime was thirty years at hard labor, it failed to advise him that the first five years of the sentence must be served without benefit of parole, probation or suspension of sentence, or that the penalty includes a mandatory fine up to fifty thousand dollars.” Apparently, counsel for the defendant is referring to La. R.S. 40:966(B)(1), which provides:
 

 A substance classified in Schedule I which is a narcotic drug upon conviction shall be sentenced to imprisonment for
 
 *323
 
 not less than five nor more than fifty years at hard labor at least five years of which shall be served without benefit of probation, or suspension of sentence, and may, in addition, be required to pay a fine of not more than fifty thousand dollars.
 

 That sentencing provision only applies to convictions of possession with intent to distribute opiates and certain opium derivatives, such as heroin and morphine.
 
 See also
 
 La. R.S. 40:964(A) (listing controlled dangerous substances contained in Schedule I). The defendant was convicted of possession with intent to distribute marijuana. We cannot say that the defendant failed to enter a knowingly and voluntary plea on Count 2 because the trial court failed to advise him of statutory benefit restrictions. There were no statutory benefit restrictions on Count 2.
 

 Count 3
 

 The defendant pleaded guilty to Count 3, possession with intent to distribute MDMA, a violation of La. R.S. 40:966(A). The sentencing provision, La. R.S. 40:966(B)(2), states:
 

 [U]pon conviction [the defendant shall be sentenced] to a term of imprisonment at hard labor for not less than five years nor more than thirty years, at least five years of which shall be served without benefit of parole, probation, or suspension of sentence, and pay a fine of not more than fifty thousand dollars, (emphasis added)
 

 |2nMandatory Fine
 

 The defendant contends that the trial court erred in failing to indicate that a conviction under La. R.S. 40:966(A) includes a mandatory fine “of not more than fifty thousand dollars.”
 
 [5]
 
 For the reasons described above addressing the trial court’s failure to impose a mandatory fine on Count 1, we hold that the trial court’s failure to impose a mandatory fine on Count 3 was harmless.
 

 Restriction of Benefits
 

 The defendant also contends that his plea on Count 3 was not knowing and voluntary because the trial court failed to advise him that the first five years of the sentence had to be served without the benefit of parole, probation or suspension of sentence.
 

 In a similar recent case arising out of the Second Circuit, the defendant argued his guilty pleas to attempted second degree murder and armed robbery were not knowingly and voluntarily made because the trial court failed to inform him his sentences would be served without benefit of parole, probation, or suspension of sentence.
 
 State v. Warren,
 
 42,699 (La.App. 2 Cir. 10/24/07), 968 So.2d 909,
 
 writ denied,
 
 07-2485 (La.5/16/08), 980 So.2d 707. The Second Circuit found that under the facts and circumstances of that case, the defendant’s guilty pleas were knowing and voluntary, and should not be invalidated.
 
 Warren,
 
 968 So.2d at 912. The court reasoned that the trial court had thoroughly advised the defendant of his
 
 Boykin
 
 rights and the defendant had indicated his willingness to plead | ⅞) guilty throughout the plea colloquy.
 
 Id.
 
 The court further noted that the defendant had “acknowledged that he had consulted with his attorney as to the nature and consequences of the
 
 *324
 
 charges and his guilty pleas prior to the guilty plea hearing,” and that that “there was overwhelming evidence of defendant’s guilt and participation [in the crimes for which he pleaded guilty].”
 
 Id.
 
 The Second Circuit ultimately held that “the trial court’s failure to inform defendant of the mandatory minimum and maximum penalties for the offenses does not appear to have been a material factor impacting defendant’s decision to plead guilty, and his substantial rights were not affected.”
 
 Id.
 

 Similarly, in this case, the trial court advised the defendant of his
 
 Boykin
 
 rights and the defendant had indicated his willingness to plead guilty throughout the plea colloquy. The defendant acknowledged that he had discussed the guilty plea with his attorney and that he still desired to plead guilty. Moreover, the defendant received a substantial benefit for pleading guilty. In addition, we cannot accept the Defendant’s argument that the defendant would have not have pleaded guilty to Count 3 had he known that five years of his sentence had to be served without parole, probation, or suspension of sentence.
 

 Under the circumstances, the defendant’s rights were not affected. Therefore, we hold that the trial court’s failure to state that the first five years of the defendant’s sentence on Count 3 had to be served without the benefit of parole, probation or suspension of sentence did not render the defendant’s guilty plea on Count 3 unknowing or involuntary.
 

 122Count 4
 

 The defendant pleaded guilty to Count 4, possession of cocaine in excess of 28 to 199 grams, a violation of La. R.S. 40:967(F). The sentencing provision, La. R.S. 40:967(F)(l)(a) states:
 

 [The defendant] shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
 

 (emphasis added)
 

 In addition, La. R.S. 40:967(G) states: [T]he adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.
 

 (emphasis added)
 

 Defendant asserts his plea to count four was unknowing and involuntary because the trial court failed to indicate that five years of his sentence had to be served without the benefit of parole or probation and because he was not advised of the mandatory statutory fine.
 

 The waiver of rights form indicates that the defendant was advised that the maximum sentence he faced on Count 4 was thirty years at hard labor. During the plea colloquy, the trial court advised the defendant he faced a maximum sentence of 30 years for possession of cocaine over 28 grams. The trial court sentenced the defendant to a term of imprisonment of ten years at hard labor. However, the trial court did not assess the mandatory statutory fine, nor did she inform the defendant that five years of the sentence must be served without benefit
 
 of
 
 probation or parole.
 

 |
 
 asMandatory Fine
 

 The defendant should have been assessed with a fine “of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.” However, for the reasons described above addressing the trial court’s failure to impose a mandatory fine on Count 1, we believe that the trial court’s failure to impose a mandatory fine on Count 3 was harmless.
 

 
 *325
 

 Restriction of Benefits
 

 The trial court should have informed the defendant that at least five years of his sentence on Count 4 must be served without benefit of probation or parole.
 

 For the reasons described above addressing the trial court’s failure to impose mandatory statutory benefits on Count 3, we find that the trial court’s failure to impose a sentence without mandatory statutory benefits on Count 4 did not render the defendant’s plea unknowing and involuntary.
 

 Habitual Offender Sentence
 

 The defendant contends that his stipulation to second felony offender status was not knowing and voluntary because he was not informed that the entirety of his enhanced sentence had to be served without benefit of probation or suspension of sentence.
 

 The defendant received an enhanced second felony offender sentence on Count 2. As a second felony offender, the defendant’s sentence exposure was “not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction!.]” Thus, his sentencing exposure was a range of 15 to 60 years. La. R.S. 15:529.1(A)(l)(a). Furthermore, La. R.S. 15:529.1(G) provides that an enhanced sentence ^imposed under the Habitual Offender Law “shall be without benefit of probation or suspension of sentence.”
 

 There is no indication in the record that the instant defendant was advised he would receive a probated or suspended sentence as a second felony offender. There is no indication in the record that the failure to advise the instant defendant of his ineligibility for probation and suspension of sentence would have affected his willingness to plead guilty. As such, the trial court’s error was harmless.
 

 FIFTH AND SIXTH ASSIGNMENTS OF ERROR
 

 In his fifth assignment of error, the defendant contends that trial counsel was ineffective for failing to object to the sentences imposed because the sentences imposed were allegedly not part of the defendant’s promised plea bargain. In his sixth assignment of error, the defendant contends that trial counsel was ineffective for failing to object to the illegally lenient sentences imposed by the trial court.
 

 Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel.
 
 State v. McDonald,
 
 04-550 (La. App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042,
 
 writ denied,
 
 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 State v. Dabney,
 
 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
 

 Under the
 
 Strickland
 
 test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense.
 
 State v. Dabney,
 
 908 So.2d at 63
 
 (citing Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064). This requires showing that 12r,counsel’s errors were so serious as to deprive the defendant of a trial whose result is reliable.
 
 Id.
 
 The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 Id.
 

 
 *326
 
 A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
 
 Id.
 
 There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time.
 
 State v. LaCaze,
 
 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79,
 
 cert. denied,
 
 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee er-rorless counsel or counsel judged ineffective by hindsight.
 
 Id.
 

 A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal.
 
 State v. Washington,
 
 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 State v. Deruise,
 
 98-0541 (La.4/3/01), 802 So.2d 1224, 1248,
 
 cert. denied,
 
 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
 

 Both of these assignments of error assert that trial counsel was ineffective for failing to object to the sentences imposed because those sentences were illegal. | ^However, as described above, the defendant’s assignments of error asserting that his sentences were illegal have no merit. Accordingly, the defendant could not have possibly been prejudiced by counsel’s failure to object to his sentences and he cannot meet the second prong of the
 
 Strickland
 
 test. These assignments of error have no merit.
 

 PRO-SE ASSIGNMENT OF ERROR
 

 The defendant filed a supplemental prose brief in this matter, assigning one error to the pro-se error. The defendant contends that the previous conviction from 1997 the state used to sentence him as a second felony offender in this case was previously enhanced by an earlier conviction in 1993. As a result, the defendant contends that he was subjected to a “double enhancement” on the 1997 conviction.
 

 La. R.S. 15:529.1(D)(l)(b) provides that “[a]ny challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.”
 
 See also State v. Girod,
 
 96-660 (La.App. 5 Cir. 11/25/97) 703 So.2d 771;
 
 State v. Kittlin,
 
 97-92 (La.App. 3 Cir. 6/4/97), 695 So.2d 1137. Since the defendant failed to apprise the trial judge at the sentencing hearing of his objection for “double enhancement” and the basis for the objection, he did not preserve this issue for review on appeal.
 

 Moreover, the assignment of error has no merit. The Louisiana Supreme Court has held that there is no prohibition against using the same conviction, even if enhanced, multiple times as long as the prior felony used to enhance the conviction is not also used as a prior felony conviction in the habitual offender bill of information. State
 
 v. Baker,
 
 2006-2175 (La.10/16/07), 970 So.2d 948.
 

 Similarly, in
 
 State v. Pearson,
 
 03-652 (La.App. 5 Cir. 12/09/03), 861 So.2d 283, the defendant was convicted of possession of cocaine in 1990 and was convicted of theft in 1995. In 2000, the defendant pled guilty to possession of^coeaine. A habitual offender bill was then filed charging the defendant as a third felony offender.
 
 *327
 

 Id.
 
 at 284. The defendant stipulated to the bill, but on appeal urged that he was improperly adjudicated a third felony offender. The defendant claimed that the 1990 conviction had been used to adjudicate him a second felony offender and enhance his penalty after the 1995 conviction.
 
 Id.
 
 at 288. Therefore, he argued it was “double enhancement” to use the 1990 conviction as a predicate for adjudicating him a third felony offender. This Court held that “there is no prohibition against using the same conviction multiple times in separate multiple offender proceedings to sequentially establish defendant’s multiple offender status and enhance defendant’s sentence as to the new crime.”
 
 Id.
 
 (citing
 
 State v. Brooks,
 
 99-478 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 342-343,
 
 writ denied,
 
 00-1492 (La.5/25/01), 792 So.2d 750). That is exactly what occurred in this case.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent pursuant to La. C. Cr. P. art. 920(2).
 
 See also State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We discern one error patent.
 

 The trial court failed to properly notify the defendant of the proper two-year prescriptive period for filing post conviction relief sentencing pursuant to La. C. Cr. P. art. 930.8. The sentencing transcript indicates that the trial court informed the defendant that he had “two years from the date the judgment of conviction becomes final to seek post-conviction relief.”
 

 La. C. Cr. P. art. 930.8(A) provides that no application for post conviction relief “shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final.” This Court has held on several occasions that the failure to advise a defendant that the prescriptive period runs from the time his conviction
 
 and sentence
 
 become final renders the advisement 128incomplete.
 
 See, e.g., State v. Lauff,
 
 06-717 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 821. We therefore advise the defendant by this opinion that no application for post-conviction relief, including an application which seeks an out of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 and 922.
 
 See State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451 (citing
 
 State v. Morris,
 
 40,322, pp. 4-5 (La.App. 2 Cir. 1/25/06), 920 So.2d 359, 363).
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968).
 

 [3]
 

 . The defendant does not challenge his guilty pleas to Counts 5 and 6.
 

 [4]
 

 . Possession with intent to distribute marijuana is punishable by a term of imprisonment of between five and thirty years. La. R.S. 40:966(B)(3). As a second felony offender, the defendant's imprisonment exposure in this case was a minimum of ten and a maximum of sixty years, without benefit of probation or suspension of sentence. La. R.S. 15:529.1(A)(1)(a); La. R.S. 15:529.1(G). La. R.S. 15:529.1 does not contain any requirement that any part of a second felony offender’s sentence be imposed without parole separate from the requirement by the statute under which the defendant is sentenced. There are no statutory benefit restrictions on a violation of possession with intent to distribute marijuana.
 

 [5]
 

 . This Court has held that a statute providing for a fine of "not more than” a specified amount does require a mandatory fine. However, we have also noted that the matter is not free from doubt.
 
 State v. Kerlec,
 
 06-838, p. 8 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815,
 
 writ denied,
 
 07-1119 (La. 12/7/07), 969 So.2d 626;
 
 State v. Phillips,
 
 02-0866 (La. 11/22/02), 834 So.2d 972,
 
 cert. denied,
 
 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003) (Calogero, C.J., dissenting from writ denial).